UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENNY WALKER,

        Petitioner,             Case No. 1:08-cv-4

v.                                           Honorable Paul L. Maloney

CINDI S. CURTIN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in the Wayne County Circuit Court to manslaughter, MICH. COMP. LAWS § 750.321; second-degree murder, MICH. COMP. LAWS § 750.317; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. On June 23, 2003, the trial court sentenced Petitioner to prison terms of 10 to 15 years, 22 1/2 to 50 years and 2 years, respectively. In his *pro se* petition, Petitioner raises five grounds for relief, as follows:

    I.     IT WAS CLEARLY ERRONEOUS FOR THE CIRCUIT COURT TO ACCEPT [PETITIONER'S] PLEA OF GUILTY TO THE CHARGED OFFENSES AS THE PLEA LACKED A FACTUAL BASIS.

    II.    IT WAS CLEAR ERROR FOR THE CIRCUIT COURT TO ACCEPT [PETITIONER'S] GUILTY PLEA BECAUSE WHERE THE CONSTITUTION REQUIRES THAT A GUILTY PLEA BE VOLUNTARY, KNOWING, AND INTELLIGENT, THE RECORD CLEARLY REFLECTS APPELLANT'S CONFUSION, EQUIVOCATION, AND DOUBT ABOUT HIS VERY GUILT.

    III.   [PETITIONER] WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PLEA PROCEEDINGS.

    IV.    [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AS GUARANTEED BY THE UNITED STATES AND MICHIGAN CONSTITUTIONS, FOR NOT RAISING ISSUE[S] THAT WERE OBVIOUS AND SIGNIFICANT, CONSTITUTING A DEMONSTRATION OF "CAUSE" AND "PREJUDICE."

    V.    [PETITIONER'S] SENTENCE WAS NOT INDIVIDUALIZED AND REQUIRES RESENTECING.

Respondent has filed an answer to the petition (docket #8) stating that the grounds should be denied because they are procedurally defaulted, not cognizable or are without merit. Upon review and applying the AEDPA standards, I find that Petitioner fails to raise a meritorious federal claim. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from the deaths of Demetrius Thomas and Lakeysha Rodgers. Petitioner originally was charged with one count of second-degree murder and second habitual offender in the case involving Ms. Rodgers and first-degree murder, felon in possession of a firearm, possession of a firearm during the commission of a felony and second habitual offender in the case involving Mr. Thomas.

A preliminary examination was held on November 18, 2002. (Preliminary Examination Transcript (PE Tr.), docket #12). Minnie Rodgers, Lakeysha Rodgers' mother, testified that Lakeysha was nineteen years old at the time of her death. (PE Tr., 20.) The last time Minnie saw her daughter was the afternoon of Thursday, July 26, 2001. (PE Tr., 21.) Minnie testified that Petitioner called her from Sinai-Grace Hospital at 5:30 or 6:00 p.m. on Friday, July 27, and told her that he and Lakeysha had a car accident at the intersection of Seven Mile and Ferguson and that Lakeysha had bumped her head. (*Id*.) When Minnie arrived at the hospital later that night,

she was told that Lakeysha was not there. (PE Tr., 25.) Minnie went back to Sinai-Grace on Saturday to look for Lakeysha. (PE Tr., 26.) Petitioner called Minnie several times on Friday night and Saturday. (PE Tr., 26-27, 37.) He insisted that he took Lakeysha to Sinai-Grace and that she was okay. (PE Tr., 26.) On Saturday evening, Petitioner told Minnie over the phone that he had talked to Lakeysha and she was at her friend D's house. (PE Tr., 28, 31.) Minnie finally learned on Monday that her daughter was at the Medical Examiner's Office. (PE Tr., 30-31.)

Zenja Rodgers, the sister of Lakeysha Rodgers, testified that Petitioner picked Lakeysha up at her home at about 11:30 p.m. on Thursday, July 26, 2001. (PE Tr., 39-40.) When Lakeysha left with Petitioner, she did not have any injuries to her face or head. (PE Tr., 41.) Zenja called Petitioner on Saturday afternoon looking for her sister. (PE Tr., 42.) Petitioner told her that he had just talked to her and that she was over at D's house. (PE Tr. 43.)

Detroit Police Officer Tremayne Burton testified that he saw a man arrive at the emergency room at Sinai-Grace at 3:00 a.m. on Friday morning. (PE Tr., 46.) The emergency room staff helped the driver to remove an unconscious woman from the car. (PE Tr., 47.) As Officer Burton attempted to approach the driver, a security guard was yelling at the driver to move his car. (*Id*.) The driver got into the car and drove away. (PE Tr., 49.) Burton took down the license plate number and passed it along to other members of the police department. (PE Tr., 50.) Burton testified that he did not get a good look at the driver's face, but Petitioner fit the general description. (PE Tr., 49, 53.)

Shirley Walker, Petitioner's sister, testified that she went to her mother's home on at 10:00 p.m. on Sunday, July 29, 2001. Shirley's boyfriend, Demetrius Thomas, drove them over and parked in the driveway. (PE Tr., 56-62.) Shirley's mother walked up to the car window and

told her something about Keysha, but Shirley did not know which Keysha her mother was talking about. (*Id.*) While they were talking, Petitioner arrived at the house and parked his car in street, blocking Thomas' car in the driveway. (PE Tr., 64-65.) Petitioner walked up to the driver's side window and said to his mother, "You know what I'm going to do." (PE Tr., 65-66.) Shirley could see a gun in Petitioner's hands. (*Id.*) Petitioner then shot Thomas three or four times. (PE Tr., 66.) Shirley testified that Thomas has a gun in the car, but did not know if he fired it at Petitioner. (PE Tr., 73-75, 79, 84-86.) Before Thomas was shot, the gun was positioned between the front driver and passenger seat. (PE Tr., 81.) After the shooting, the gun was on the floor. (*Id.*) Thomas was unconscious after the shooting. (PE Tr., 71.) Shirley did not see where her brother went after he shot Thomas. (PE Tr., 71-72.) Shirley's mother drove her and Thomas to the hospital and then left. (PE Tr., 73.) Shirley stated that Thomas and Lakeysha knew each other because Thomas was dating Shirley and Lakeysha was dating her brother. (PE Tr., 76-77.) Thomas and Lakeysha sometimes came into contact with each other at their mother's house. (PE Tr., 77-78.) To Shirley's knowledge, that was the only way Thomas and Lakeysha knew each other. (PE Tr., 78.)

Jacqueline Walker, Petitioner's mother, testified that Lakeysha was Petitioner's girlfriend and lived at her home for about two years. (PE Tr., 108-09.) Lakeysha and Petitioner shared a bedroom on the first floor. (PE Tr., 113.) The last time Jacqueline saw Lakeysha was on Thursday morning at the Walker home. (PE Tr., 109.) She also saw Petitioner at the house sometime on Thursday. (PE Tr., 112-13.) Jacqueline did not see Petitioner at all on Friday. (PE Tr., 113.) On Sunday, Petitioner arrived at the house while Thomas and Shirley were parked in the driveway. (PE Tr., 115.) Petitioner blocked the driveway with his car. (PE Tr., 121.) Jacqueline testified that Petitioner came up to the car and got into an argument with Thomas. (PE Tr., 116,

125.) According to Jacqueline, Thomas pulled out a silver gun and fired two shots through the car window toward Petitioner. (PE Tr., 116, 125-27.) After that, Petitioner lifted up a gun and started shooting. (PE Tr., 128.) Jacqueline did not see where Petitioner went after the shooting stopped. (*Id*.) Jacqueline moved the car blocking the driveway and then drove Thomas to the hospital. (PE Tr., 116.) A homicide detective informed Jacqueline of Lakeysha's death on Monday. (PE Tr., 109.) Jacqueline owned a white Topaz that Petitioner sometimes drove. (PE Tr., 111.)

Oliver Rodgers, Lakeysha Rodgers' brother, testified that Petitioner called his house on Friday night looking for Lakeysha. (PE Tr., 91.) Oliver was confused by the call because he thought Lakeysha was with Petitioner. (PE Tr., 92.) Oliver spoke with Petitioner again on Sunday night. (PE Tr., 93-95.) During that conversation, Petitioner told Oliver that Lakeysha tried to break up with a guy named D. She and D got into a fight and D beat her up. (PE Tr., 102, 105.) Oliver did not know anyone named D or Demetrius Thomas. (PE Tr., 105.) Petitioner told Oliver that he took Lakeysha to Sinai-Grace Hospital. (PE Tr., 103.) Petitioner said that he got that "mother fucker who put his hands on Lakeysha. (PE Tr., 95-97.) Oliver learned on Monday that Lakeysha was dead. (PE Tr., 97.) In a third conversation on Monday, Petitioner told Oliver that he stayed at the hospital for a while with Lakeysha. (PE Tr., 104.)

Dr. Leigh Havaty testified that Lakeysha Rodgers died from blunt force trauma to the head. (PE Tr., 9.) Havaty could identify two blows - one to the right temple area and a second to the mouth. (PE Tr., 9.) The blow to her temple caused a subdural hemmorhage that resulted in her death. (PE Tr., 10-11.) According to Dr. Havaty, the blow to her temple would have rendered her immediately unconscious and she would have died within half an hour. (PE Tr., 11.) Havaty opined that the blow was inflicted by a blunt object. He did not believe that the injury could have

been caused by a fist.  (*Id.*)  Havaty also did not believe that the injury was consistent with a head injury caused by a car accident.  (*Id.*)  Havaty estimated that Rodgers died somewhere between midnight and the time she arrived at the hospital.  (PE Tr., 13.)

The parties stipulated that Dr. Yung Chung would testify that Thomas died of multiple gunshot wounds.  He was shot four times - in the head, chest, left arm and left wrist.  (PE Tr., 5-6.)  At the conclusion of the Preliminary Examination, Petitioner was bound over to the Circuit Court as charged.  (PE Tr., 140.)

Trial counsel requested a forensic examination for Petitioner, both as to criminal responsibility and competency to stand trial.  An independent psychological examination was completed on August 20, 2002.  Petitioner was found criminally responsible and competent to stand trial.

On June 23, 2003, the day that Petitioner was scheduled to go to trial, he pleaded guilty to manslaughter in the death of Lakeysha Rodgers and second-degree murder and felony-firearm in the death of Demetrius Thomas.  (Plea Transcript (Plea Tr.), docket #13.)  Petitioner's plea was made pursuant to a sentence agreement under *People v. Cobbs*, 443 Mich 276 (1993), whereby Petitioner would be sentenced to concurrent terms of 10 to 15 years in prison for the manslaughter conviction and  22 1/2 to 50 years for the second-degree murder conviction, in addition to 2 years for the felony-firearm conviction.  (Plea Tr., 8-10.)  During the plea hearing, Petitioner expressed uncertainty about whether he wanted to plead guilty.  He asked the trial court whether, if he went to trial, the jury would be instructed on self-defense.  (Plea Tr., 11-13.)  The trial court responded that the jury would be allowed to consider whatever defense Petitioner might raise. (Plea Tr., 11-13.)  Petitioner told the court that he shot Thomas after Thomas shot at him.  (Plea Tr.,

16.)  The Court told Petitioner that he could let the jury decide whether he acted in lawful self-defense or take the plea agreement and waive the defense.  (Plea Tr., 16-17.)  Petitioner stated that he wanted to go to trial.  (Plea Tr., 18.)  However, after further consideration of the evidence that contradicted Petitioner's claim of self-defense, Petitioner decided to plead guilty.  (Plea Tr., 18-19.)

At the plea hearing, Petitioner admitted that he shot Thomas four times.  (Plea Tr., 24.)  Petitioner initially told the court that he had nothing to do with Lakeysha Rodgers' death.  (Plea Tr., 26.)  He claimed that Thomas jumped her.  (Plea Tr., 26-29.)  After a recess, Petitioner told the court that he "done it."  (Plea Tr., 38.)  Petitioner admitted that he "hit" Lakeysha Rodgers because he was mad.  (Plea Tr., 38.)  Petitioner told the court that he hit her in the face with his hand.  (Plea Tr., 39.) Petitioner knew that he hit Lakeysha hard enough that he had to take her to the emergency room.  (Plea Tr., 40.)  The trial court found a sufficient factual basis for the plea.  (Plea Tr., 41.)

On July 7, 2003, the trial court sentenced Petitioner in accordance with the plea agreement to concurrent prison terms of 10 to 15 for the manslaughter conviction and 22 1/2 to 50 years for the second-degree murder conviction, in addition to a consecutive 2-year term for the felony-firearm conviction for which Petitioner was given credit for 467 days time served.  (Sentencing Transcript, (S. Tr.), 23, docket #14.)

### B.     Direct Appeal

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on October 19, 2004, raised only the claim that Petitioner's sentence was not individualized.  (*See* Def.-Appellant's Br. on Appeal, docket #15.)  On February

18, 2005, the Michigan Court of Appeals issued an order denying Petitioner's application for leave appeal for lack of merit in the grounds presented. (*See* 1/18/04 Mich. Ct. App. Ord, docket #15.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same claim raised before and rejected by the Michigan Court of Appeals. In addition, Petitioner raised four new claims that now are his first four grounds for habeas corpus relief. By order entered August 30, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 8/30/05 Mich. Ord., docket #16.)

### C. Post-conviction relief

On January 20, 2006, Petitioner filed a motion for relief from judgment raising the four claims that he first raised on direct appeal in the Michigan Supreme Court. The Wayne County Circuit Court denied Petitioner's motion on June 1, 2006. In denying Petitioner's motion, the trial court stated:

> Defendant alleges the trial court was clearly erroneous and should not have accepted his guilty plea as it lacked a factual basis. Next, defendant asserts it was clear error for the circuit court to accept defendant's guilty plea as his plea was involuntary, unknowing and unintelligent which is clearly reflected in the record. Defendant's final argument is that he was deprived of effective assistance of counsel during the plea bargaining proceedings.
>
> Defendant's first and second issues will be combined, as they both address his guilty plea. In order for a plea to be accepted, it must be voluntary. A plea is considered voluntary, after being measured by a subjective test. A promise of leniency or bad advice from defense counsel is not, of itself, coercive enough to vitiate a guilty plea as a matter of law. *People v. Forrest*, 45 Mich App 466; 206 NW2d 745 (1973).
>
> The question in each case is whether the inducement for the guilty plea was one, which necessarily overcame the defendant's ability to make a voluntary decision. *Cortez v. United States*, 381 US 953; 85 S Ct 1800 (1965). Defendant claims he pled guilty because he was concerned for his future, he states that he is mentally challenged and he lacked any knowledge of the criminal justice system. However,

> on August 20, 2002, after being examined by a psychologist, defendant was deemed competent and criminally responsible. Moreover, during voir dire prior to taking defendant's guilty plea this Court asked on numerous occasions whether defendant was pleading guilty because he was guilty and not due to forces inside or outside of the court. Defendant answered affirmatively. Further, defendant has benefitted from his plea bargain, wherein he had the original charge of first degree murder reduced to second degree murder, a recession in the habitual offender charge and a sentence agreement not to exceed 50 years. Thus, defendant received a term of years, rather than a mandatory "LIFE" sentence as a result of tendering his guilty plea.
>
> Defendant argues there was no factual basis on which the court could have accepted his guilty plea, however, in defendant's own statement of facts, he admits to shooting Demetrius Thomas four times with a handgun, and striking Lakeysha Rodgers in the head, both of which resulted in their respective deaths. Thus, his statement of facts, which he purports is the facts in this case from his perspective lay out a factual basis to support his murder and manslaughter convictions. Therefore, after reviewing all documents and records as a whole, this Court cannot hold that defendant's plea was involuntary, or lacked any factual basis to support his conviction.
>
> Although defendant now argues he did not shoot Mr. Thomas first, but returned fire after the deceased first shot him [sic] does not eradicate the previous transcript that any of the statements defendant gave to this Court were involuntary, unknowing or unintelligent. *Id.* As such, defendant's argument must fail.
>
> As for defendant's ineffective assistance of counsel claim, an unconditional guilty plea waives all claims regarding the capacity of the state to prove factual guilt. *People v. New*, 427 Mich. 482, 491; 398 NW2d 358 (1986). And a plea waives issues regarding the denial of a motion to suppress evidence. *People v. Lannom*, 441 Mich. 490, 493; 490 NW2d 396 (1992). A defendant also waives ineffective assistance of counsel claims by unconditionally pleading guilty where the issues relate solely to the state's capacity to prove factual guilt. *People v. Vonins* (After Remand), 203 Mich App 173, 175-176; 511 NW2d 706 (1993). Therefore, this Court hold that defendant waived any ineffective assistance of counsel claim related to counsel's failure to properly present any defenses presented in defendant's motion [for relief from judgment.]

(6/1/06 Wayne County Circuit Court Op., 2-4, docket #17.) The Michigan Court of Appeals denied Petitioner's application for leave to appeal on June 26, 2007, for lack of merit in the grounds presented. (*See* 6/26/07 Mich. Ct. App. Ord, docket #17). The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal on October 29, 2007, because

Petitioner failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D). (*See* 10/29/07 Mich. Ord., docket #18.)[1]

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

---

[1]Respondent contends that Petitioner's first three grounds for habeas corpus relief are procedurally defaulted because they were raised for the first time in his motion for relief from judgment and the Michigan Supreme Court relied upon MICH. CT. R. 6.508(D) in denying his application for leave to appeal. Federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**Discussion**

I.     Guilty Plea: Grounds I and II

Petitioner raises two claims concerning his guilty plea. First, Petitioner claims in Ground I that his plea was invalid because it lacked a sufficient factual basis. He argues that neither the evidence, nor his statements at the plea hearing, provided a factual basis to support the second-degree murder conviction with regard to Demetrius Thomas. Petitioner maintains that Thomas shot at him first and he shot back in self-defense because he honestly and reasonably believed that he was in danger of imminent death. Petitioner further asserts in Ground II that his plea was not entered in a voluntary, knowing and intelligent manner. Petitioner claims that he is mentally challenged and that his lack of education and knowledge of the law were used against him by his lawyer and the trial court to coerce him to plead guilty to second-degree murder, when, in fact, he had acted in self-defense. Petitioner contends that his "confused and contradictory" statements at the plea hearing are further evidence that his plea was involuntary.

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

In the present case, the state has submitted the transcript of Petitioner's guilty plea before Judge Morrow, who carefully questioned Petitioner concerning both the voluntariness of his plea and his understanding of the charges, the penalties he faced if convicted, and the rights that he forfeited by pleading guilty. Petitioner was found criminally responsible and competent to stand trial. Petitioner was able to clearly express himself at the plea hearing and posed thoughtful questions to the trial court regarding his case. At the outset of the hearing, Petitioner stated that he was guilty and that no one had threatened or forced him to plead guilty. (Plea Tr., 8.) The court informed Petitioner of the sentence that was to be imposed under the *Cobb*'s agreement. (Plea Tr., 8-9.) The court also informed Petitioner of the rights he would waive by pleading guilty. (Plea Tr., 10-11.) While Petitioner considered going to trial on a theory of self-defense in the death of Demetrius Thomas, he ultimately decided to plead guilty. (Plea Tr., 19.) Both parties stipulated that there was a sufficient factual basis for the plea. (Plea Tr., 41). When Petitioner moved for relief from judgment, the circuit judge again reviewed the plea transcript and made independent findings of the voluntariness of the plea. A presumption of correctness attaches to these findings. *Garcia*, 991 F.2d at 326.

The allegations in the habeas corpus petition do not sustain a petitioner's "heavy burden" to overturn these state findings, *Garcia*, 991 F.2d at 328, nor do they demonstrate that the state trial judge's decision was an unreasonable application of Supreme Court authority, as required by the AEDPA. 28 U.S.C. § 2254(d). The plea transcript belies Petitioner's assertion that his lawyer and the trial court coerced him to plead guilty to second-degree murder. Moreover, the fact that Petitioner equivocated or expressed some doubts during the plea hearing does not show that his plea was unknowing, unintelligent or involuntary. To the contrary, it demonstrates that Petitioner understood his options and considered them carefully before making a decision to plead guilty.

Petitioner also presents extensive arguments concerning the adequacy of the factual basis for the plea. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. The state courts are not constitutionally required to establish a factual basis for an otherwise voluntary and intelligent plea. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)). While a factual basis is not constitutionally required, Petitioner admitted at the plea hearing that he shot Demetrius Thomas four times. (Plea Tr., 24.) He also admitted at the plea hearing that he hit Lakeysha Rodgers in the head with sufficient force that she had to be taken to the hospital. (Plea Tr., 38-40.) Consequently, Petitioner's admissions were sufficient to provide a factual basis for his guilty plea.

Further, Petitioner suggests that he pleaded guilty to avoid a possible life sentence. The Supreme Court has long recognized that a guilty plea resulting from the weighing of such

practical factors is voluntary, even though a defendant faces unpalatable choices. *See, e.g., Brady*, 397 U.S. at 750-51 (guilty plea not involuntary merely because defendant feared death penalty if found guilty at trial). In the present case, petitioner faced a mandatory non-parolable life sentence if he was found guilty of the first-degree murder of Demetrius Thomas. In addition, he faced another potential life sentence if he had been convicted of the second-degree murder of Lakeysha Rodgers and was sentenced as an habitual offender. He avoided that eventuality by pleading guilty to reduced charges of second-degree murder and manslaughter. Under the plea agreement, the trial court was required to impose a sentence of 22 1/2 to 50 years for the second-degree murder conviction, a concurrent term of 10 to 15 years for the manslaughter conviction. Because the sentences were ordered to be served concurrently, the sentence on the manslaughter conviction was subsumed within the sentence for the second-degree conviction. Petitioner also was sentenced to a consecutive 2-year prison term for felony-firearm. Nothing in the record indicates that his choice to plead guilty, rather than risk the possibility of a non-parolable life sentence, was unintelligent or involuntary.

## II.     Ineffective Assistance of Counsel: Grounds III and IV

Petitioner claims that his trial counsel rendered ineffective assistance by coercing him to plead guilty by using "scare tactics," informing Petitioner that he would spend the rest of his life in prison if he did not plead guilty. Petitioner contends that considering the "flimsy" evidence of his guilt and the fact that Petitioner denied being guilty of murder, counsel should never have advised him to plead guilty.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To

establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. To establish that advice with regard to a guilty plea had a prejudicial effect under *Strickland*, a defendant must establish "a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

While Petitioner accuses his attorney of using "scare" tactics to coerce his plea, the truth of the matter is that Petitioner faced a non-parolable life sentence if the jury rejected his theory of self-defense in the death of Demetrius Thomas. As discussed above, Petitioner could have

received additional lengthy sentences if the jury found him guilty on the remaining charges. By pleading guilty under the terms of the *Cobb*'s agreement, Petitioner could guarantee that he would serve no more than 50 years and as little as 22 1/2 years. Under the circumstances of Petitioner's case, trial counsel's recommendation that Petitioner plead guilty was well within the range of reasonable professional assistance. Petitioner told the trial court at the plea hearing that no one had threatened or forced him to plead guilty. (Plea Tr., 8.) He also told the trial court after he decided to plead guilty that he liked his trial counsel and that he was a "good guy." (Plea Tr., 19.) Moreover, despite Petitioner's assertion that the evidence against him was "flimsy," he admitted at the plea hearing to causing the deaths of Demetrius Thomas and Lakeysha Rodgers. Petitioner, therefore, cannot show that but for his counsel's alleged error, he would not have pleaded guilty. Accordingly, Petitioner's claim of ineffective assistance of trial counsel must fail.

Petitioner also claims in Ground IV that his appellate counsel was ineffective for failing to raise the claims asserted in Grounds I through III on direct appeal. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2002).

In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289; *see also Buell v. Mitchell*, 274 F.3d 337, 351 (6th Cir. 2001) ("Buell's appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points.").

I concluded above that Grounds I through III are without merit. Consequently, appellate counsel was not ineffective for failing to raise them on direct appeal.

### III.     Sentence: Ground V

In Ground V, Plaintiff claims that he is entitled to re-sentencing because his sentence was not individualized. Petitioner argues that the trial court failed to take into consideration the evidence that he acted in self-defense when he shot Thomas and that there only was circumstantial evidence that he caused Lakeysha Rodgers' death. There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also See Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court noted: "We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). Furthermore, the trial court imposed the sentence pursuant to the *Cobb's* agreement. Thus, Petitioner negotiated the sentence as part of his plea and knew the exact sentence that the trial court was going to impose. Under the circumstances, Petitioner cannot complain that the trial court failed to consider mitigating factors in determining his sentence.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Date: June 17, 2009           /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).